SANDRA CABRINA JENKINS, Judge.
_JjThis appeal arises from prolonged litigation pertaining to the succession of Manuel Duskin. Appellant appeals the trial *570 court’s judgment granting appellees’ motion to annul a previously signed order, sustaining appellees’ exceptions, and overruling appellant’s exceptions. For the reasons set forth below, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
Manuel Duskin (“Mr. Duskin”) died testate on March 19, 2004. On June 23, 2004, his daughters, Lawanda Otis and Rose Duskin Champagne (“daughters”), filed a petition to probate their father’s March 12, 2004 testament and place them into possession of his estate. At the time of his death, Mr. Duskin owned twenty percent (equal to one hundred shares) of the Ma-halia Jackson Family Corporation (“the Corporation”). Mr. Duskin’s March 12, 2004 testament granted his ownership interest in the Corporation to his daughters. A judgment of possession was signed on June 24, 2004, and amended for a typographical error on September 27, 2004, awarding each daughter ten percent interest in the Corporation.
On May 9, 2007 appellant, Bishop Frank E. Lott, initiated a new action involving Mr. Duskin’s succession by filing a petition to probate, which was later denied for failure to “follow form required by law.” Appellant filed numerous other petitions over the next several months which were likewise denied for failure |ato follow form. On August 7, 2007, appellant filed an amended petition to probate a document from 1994 (“the 1994 Document”) allegedly executed by Mr. Duskin. An order granting this petition was signed and entered into the record on September 7, 2007. Appellant then filed a petition for nullification on September 13, 2007 seeking to invalidate the last will and testament the daughters probated. The petition for nullification was denied for its nonconformity with the mandates of La. C.C.P. art. 2931.[1] Appellant filed an additional pleading attempting to remedy the deficiency along with a written request asking the court to view a videotape which he contends automatically validates the 1994 Document because the video shows Mr. Duskin signing the instrument. The court did not act on this request.
The court consolidated the two actions on its own motion on July 14, 2009. A contradictory hearing on appellant’s motion to nullify the testament was scheduled for July 17, 2009, but was continued without date at the appellant’s request. Appellant filed another petition to nullify the testament on May 3, 2011, to which appel-lees filed an exception of prescription. The exception was initially sustained, but the court granted a new trial on its own motion and ultimately overruled appellees’ exception.
On February 14, 2012, appellant instituted a new action by filing a petition for damages against appellees, alleging that the testament offered for probate by the daughters was forged and that he is a rightful legatee under the 1994 Document.[2] In response to this petition, appellees filed exceptions of prescription, |ano right of action, and no cause of action. Appellees also filed a Motion to Vacate or in the Alternative, Annul an Order Previously Signed (“motion to annul”), in reference to the September 7, 2007 order probating the 1994 Document. Appellant filed exceptions to appellees’ motion to annul on the *571 grounds of no cause of action, no right of action, and prescription.
Appellant’s exceptions and appellees’ exceptions and motion were heard on September 6, 2013. On September 10, 2013, the trial court rendered judgment: (1) overruling appellant’s exceptions of prescription, no right of action, and no cause of action; (2) granting appellees’ motion to annul; (3) sustaining appellees’ exception of no right of action; and (4) sustaining appellees’ exception of no cause of action concerning the contractual action. Appellant timely filed a motion for new trial, which was subsequently denied, and this appeal followed.
DISCUSSION
Appellant asserts ten assignments of error on appeal, the majority of which are less than clear and essentially challenge the law itself on a futile basis rather than contesting the trial court’s application of the applicable law. Rule 1-3 of the Uniform Rules of the Courts of Appeal, “Scope of Review,” dictates that a court of appeal may only review issues “which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise.” See KeyClick Outsourcing, Inc. v. Ochsner Health Plan, Inc., 11-0598, p. 6 (La.App. 4 Cir. 3/14/12), 89 So.3d 1207, 1211. To preserve appellate review for an alleged error in the trial court, a party must raise an objection, and state the grounds, contemporaneously with the occurrence of the alleged error. La. C.Cr.P. art. 841(A); see also State v. Green, 10-0454, p. 22 (La.App. 4 Cir. 3/16/11), 62 So.3d 229, 242 (citing State v. Jackson, 450 So.2d 621, 634 (La.1984)). Accordingly, we will not entertain the issues raised for the first time in appellant’s brief and will only address the specific assignments that ascend from the judgment that is being appealed—sustaining appellees’ exceptions of no right of action and no cause of action, and granting appel-lees’ motion to annul the September 7, 2007 order.
Exceptions of no right of action and no cause of action present questions of law and are reviewed by this Court under a de novo standard of review. St. Pierre v. Northrop Grumman Shipbuilding, Inc., 12-0545, p. 7 (La.App. 4 Cir. 10/24/12), 102 So.3d 1003, 1009 (citing Alderdice v. Bd. of Sup’rs of Louisiana State Univ. & Agr. & Mech. Coll., 12-0148, p. 4 (La.App. 4 Cir. 7/25/12), 107 So.3d 7, 10; Hornot v. Cardenas, 06-1341, p. 12 (La.App. 4 Cir. 10/3/07), 968 So.2d 789, 798). Thus, our review entails deciding whether the trial court’s ruling sustaining the exceptions was legally correct;. Id. (citing Peneguy v. Porteous, 01-1503, p. 6 (La.App. 4 Cir. 5/15/02), 823 So.2d 380, 384).

No Right of Action

This Court recently discussed the concept of a peremptory exception of no right of action and stated that this exception assumes that the petition offers a valid cause of action and considers whether the instant plaintiff is a member of the class that has a legal interest in the underlying case. Weber v. Metro. Cmty. Hospice Found., Inc., 13-0182, p. 4 (La.App. 4 Cir. 12/18/13), 131 So.3d 371, 374 (citing Indus. Companies, Inc. v. Durbin, 02-0665, p. 12 (La.1/28/03), 837 So.2d 1207, 1216). La. C.C.P. art. 681 states “[ejxcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts.” Thus, one must have a justiciable interest in the succession proceeding in order to have standing to maintain an action to annul the testator’s testament. In re Succession of Vickers, 04-0887, p. 12 (La. *572 App. 4 Cir. 12/22/04), 891 So.2d 98, 106 (Love, J., concurring).
Here, appellant is not an heir or related to the decedent in any way. Appellant’s only avenue of establishing an interest in Mr. Duskin’s succession is through the 1994 Document. Appellant contends the 1994 Document is either a valid testament or, in the alternative and at the very least, an enforceable contract. Accordingly, in relation to the exception of no right of action, our consideration begins with determining whether the 1994 Document meets the requirements of a testament, and if not, turns to whether it can stand as a contract.
Before we determine whether the 1994 Document is a testament or perhaps a contract, a depiction of the document is warranted. The 1994 Document is a two-page, handwritten document titled “Irrevocable and Last Will and Testament.” The “testators” to the 1994 Document are Mr. Duskin and Mr. Edison Lazard,[3] president and vice-president, respectively, of the Ma-halia Jackson Family Resial [sic] Corporation. The 1994 Document attempts to bequeath appellant the rights relative to the Mahalia Jackson name, proceeds, and book belonging to Mr. Duskin and Mr. Lazard. The 1994 Document is not dated, but is notarized, and also signed by Mr. Duskin, Mr. Lazard, and one witness.
A. Testament
There are two forms of testaments in Louisiana, olographic and notarial.[4] La. C.C. art. 1574. A valid testament can only be executed by one testator, regardless Rof whether it is olographic or notarial. La. C.C. art. 1571 (“Nor may more than one person execute a testament in the same instrument.”). Thus, the fact that the 1994 Document grants Mr. Duskin and Mr. Lazard’s property together is fatal to it prevailing as a valid testament. Nevertheless, in the interest of completeness for appellant’s sake, we will examine the formality requirements of an olographic and notarial testament.

1. Olographic Testament

 An olographic testament must be entirely written, dated, and signed in the handwriting of the testator. La. C.C. art. 1575. If an olographic testament is probated, at least two credible witnesses must testify that the handwriting on the instrument is that of the testator. La. C.C.P. art. 2883. ,
Although the 1994 Document is handwritten and bears the testators’ signatures, the only date present is from the notary stamp. This precise issue has been addressed by the Louisiana Supreme Court which reversed a ruling that upheld an olographic testament written entirely in the hand of the testator, but the only date *573 appearing on the document was filled in by the notary. See In re Succession of Aycock, 02-0701 (La.05/24/02), 819 So.2d 290. Finding that the testament was invalid as to form, the Court went on to state that while extrinsic evidence Can be admitted to clarify an ambiguous date, “when the testament contains no date at all in the handwriting of the testator, a date cannot be inferred.” Id. (citing Succession of Boyd, 306 So.2d 687, 692 (La.1975)) (“An absent date cannot be supplied, for it must come from the hand of the testator.”). For this 17reason, we find the 1994 Document fails to satisfy the formality requirements of an olographic testament.

2. Notarial Testament

A notarial testament must be in writing, dated, and if the testator knows how to and is physically able to sign his name and read, the testator must declare or signify in the presence of a notary and two witnesses that the instrument is his last will and testament. La. C.C. art. 1577. Additionally, the testator must sign his name at the end of the testament and on each separate page and the notary and two witnesses must sign a declaration in the presence of each other and the testator attesting that these formalities have been followed. Id. While a material deviation from the manner of execution prescribed by La. C.C. art. 1577 will be fatal to the validity of the testament, the form of the attestation clause is not absolute. In re Succession of Holbrook, 13-1181, p. 9 (La.1/28/14), 144 So.3d 845, 851 (quoting Succession of Morgan, 257 La. 380, 242 So.2d 551, 552 (1970)). Thus, as long as the testament contains a clause signed by the witnesses and the notary that encompasses the requisites mentioned in La. C.C. art. 1577, the attestation clause will be sufficient. Id. (quoting Succession of Morgan, 242 So.2d at 552-53).
The 1994 Document was only signed by one witness and, as previously acknowledged, is not dated. Appellant argues that despite the 1994 Document only bearing one witness’s signature, two witnesses actually observed Mr. Duskin sign the document and the two affidavits he submitted from these witnesses remedies any potential defect. Although the record contains the affidavits, this does not cure the deficiency because it remains that the witnesses never signed the declaration in the presence of each other, the notary, and the testator. Accordingly, we find that the 1994 Document falls short of complying with the formalities prescribed for a | snotarial testament. See In re Succession of Carlton, 09-1339, p. 4 (La.App. 3 Cir. 4/7/10), 34 So.3d 1015, 1018 (holding that an invalid notarial testament could not be cured by submitting affidavits by -witnesses and the notary). Having determined that the 1994 Document is not a valid testament, we now turn our attention to appellant’s argument that the 1994 Document stands as a contract.
B. Contract
In Louisiana, the four elements that are required for formation of a contract are: the capacity to contract, mutual consent, a certain object, and a lawful cause. In re Succession of Flanigan, 06-1402, p. 6 (La.App. 4 Cir. 6/13/07), 961 So.2d 541, 544 (citing Fairbanks v. Tulane University, 98-1228, p. 4 (La.App. 4 Cir. 3/31/99), 731 So.2d 983, 986; La. C.C. arts. 1918, 1927,1966, and 1971). Contracts are either unilateral or bilateral and onerous or gratuitous. A contract is unilateral when the accepting party does not assume a reciprocal obligation, and bilateral when the parties obligate themselves reciprocally. La. C.C. arts. 1907-08. Likewise, a contract is onerous when both parties obtain an advantage in return for their obli *574 gation, and gratuitous when only one party obligates himself for the benefit of the other without obtaining any advantage. La. C.C. arts. 1909-10.
Considering these principles, we first find the 1994 Document is unilateral in that the accepting party (appellant) did not assume any reciprocal obligation; and second find it is gratuitous as the decedent obligated himself for appellant’s benefit without obtaining an advantage in return. When, as here, a contract is gratuitous, property can only be acquired or disposed of by donations inter vivos or mortis causa. La. C.C. art. 1467. A donation mortis causa can only be made in the form of an olographic or notarial testament. See La. C.C. arts. 1570 and 1574. |sThus, the 1994 Document does not purport to be a donation mortis causa as it fails to meet the formality requirements for both forms of testaments.
Because we find the 1994 Document is gratuitous and not a donation mor-tis causa, the document must satisfy the requirements of a donation inter vivos in order for it to prevail as a contract. A donation inter vivos is a “contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it.” La. C.C. art. 1468. Pursuant to La. C.C. art., 1541, “[a] donation inter vivos shall be made by authentic act under the penalty of absolute nullity.” The requirements for an authentic act are specified in La. C.C. art. 1833, which states in pertinent part:
A. An authentic act is a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. The typed or hand-printed name of each person shall be placed in a legible form immediately beneath the signature of each person signing the act.
B. To be an authentic act, the writing need not be executed at one time or place, or before the same notary public or in the presence of the same witnesses, provided that each party who executes it does so before a notary public or other officer authorized to perform that function, and in the presence of two witnesses and each party, each witness, and each notary public signs it. The failure to' include the typed or hand-printed name of each person signing the act shall not affect the validity or authenticity of the act.
Despite the foregoing rules, appellant contends an authentic act is not necessary because only “an express and unconditional acceptance” is required. While appellant is correct in that not all donations inter vivos must be executed by | inauthentic act,[5] the rights that are attempting to be donated in the 1994 Document are incorporeal in nature, which are not susceptible to the manual delivery exception. See La. C.C. art. 1543.[6] Thus, contrary to appellant’s suggestion, the 1994 Document must be executed by authentic act.
*575 Nevertheless, appellant further asserts that if an authentic act is necessary, the 1994 Document satisfies the requirements because of the two affidavits he submitted. An authentic act is valid, even if signed at different times, as long as all parties sign the document. Meltzer v. Meltzer, 95-0551, p. 5 (La.App. 4 Cir. 9/28/95), 662 So.2d 58, 61 (holding that an authentic act will be valid provided that the “notary and witnesses themselves also sign the act, although not necessarily at the time that any party signs it.”) (quoting Rittiner v. Sinclair, 374 So.2d 680, 685 (La.App. 4 Cir.1978)). The instant case does not comport with the rule expressed in Meltzer because here, neither of the alleged “witnesses” actually signed the 1994 Document and instead only signed affidavits. For that reason, the 1994 Document is not a properly executed authentic act and thus cannot serve as a donation inter vivos.
Therefore, having found the 1994 Document does not meet the formality requirements of a contract or testament, it follows that appellant does not belong to “the class of persons that has a legal interest in the subject matter of the litigation.” J-W Power Co. v. State ex rel. Dep’t of Revenue & Taxation, 10-1598, pp. 7-8 (La.3/15/11), 59 So.3d 1234, 1239 (citing Reese v. State, Dept. of Public Safety & Corrections, 03-1615, p. 3 (La.2/20/04), 866 So.2d 244, 246). Accordingly, ^sustaining appellees’ exception of no right of action was not error as appellant has no interest in the succession proceeding.

No Cause of Action

A peremptory exception of no cause of action tests the legal sufficiency of a petition by determining whether the law affords the plaintiff a remedy based upon the facts alleged in the pleading. Meckstroth v. Louisiana Dep’t of Transp. & Dev., 07-0236, p. 2 (La.App. 4 Cir. 6/27/07), 962 So.2d 490, 492 (citing La. C.C.P. art. 927; Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127, 131). The trial court sustained appellees’ exception of no cause of action as it relates to plaintiffs contractual action only. Thus, our review of this exception is limited to determining whether the 1994 Document can stand as a contract.
Having determined the 1994 Document fails to meet the formality requirements of a contract pretermits any discussion of appellant’s claim that the trial court erroneously sustained appellees’ exception of no cause of action. Accordingly, this assignment is without merit.

Motion to Vacate and/or Annul Order

The final ruling appellant is challenging is the trial court’s ruling granting appellees’ motion to annul the September 7, 2007 order probating the 1994 Document. When reviewing the trial court’s finding on an action in nullity, the appellate court should determine whether the trial court’s finding was reasonable, not whether the finding is right or wrong. West v. Melancon, 05-1183, p. 3 (La.App. 4 Cir. 4/26/06), 929 So.2d 809, 811 (citing Belle Pass Terminal, Inc. v. Jolin, Inc., 01-0149, p. 6 (La.10/16/01), 800 So.2d 762, 766).
| ^Appellant argues granting the motion to annul was error because it runs afoul to Mr. Duskin’s intent as evidenced in the 1994 Document. This contention is misguided as it is well established that a testator’s intent is not reached unless the testament is in proper form. See La. C.C. art. 1573; In re Succession of Dunaway, 11-1747, pp. 4-5 (La.App. 1 Cir. 5/2/12), 92 So.3d 555, 557 (citing Succession of Hendricks, 08-1914, p. 5 (La.App. 1 Cir. 9/23/09), 28 So.3d 1057, 1060). Having determined that the 1994 Document is absolutely null for failure to *576 satisfy the form requirements for either testament, Mr. Duskin’s intent is of no moment.
Appellant also asserts that not admitting the videotape which portrays Mr. Duskin signing the 1994 Document was error. It is important to note that La. C.C.P. art. 2904, the article relating to the admissibility of videotapes to prove the validity of a testament, was not enacted until 2005. The document that appellant is attempting to probate was executed in 1994, at which time no means existed to prove a testament through a videotape. Therefore, this article is inconsequential to the instant document and, despite appellant’s argument otherwise, the trial court’s failure to admit the videotape was not error.
After reviewing the record before, us, we find the trial court’s judgment granting appellees’ motion to annul the September 7, 2007 order probating the 1994 Document was reasonable as an order cannot give legal effect to a testament that is absolutely null. This final assignment of error is without merit.
DECREE
For the foregoing reasons, we find the trial court did not err in overruling appellant’s exceptions, granting appellees’ motion to annul, and sustaining appellees’ exceptions. The trial court judgment is affirmed.
AFFIRMED.

. La. C.C.P. art. 2931 provides: "A probated testament may be annulled only by a direct action brought in the succession proceeding against the legatees, the residuary heir, if any, and the executor, if he has not been discharged. The action shall be tried as a summary proceeding.”

. This action was consolidated with the earlier consolidated action.

. It should be noted that although the 1994 Document bestows certain property rights of Mr. Duskin and Mr. Lazard, from our review of the record it appears that appellant only takes issue with Mr. Duskin’s succession and has not challenged anything relating to Mr. Lazard's estate.

. The validity of a testament is determined under the laws in effect when written. See La. C.C. art. 1574 cmt. (c); see also former La. R.S. 9:2445. At the time the 1994 Document was executed, only statutory and olo-graphic testaments existed. See La. C.C. art. 1574 cmt. (a); see also former La. R.S. 9:2442. Notarial testaments replaced statutory testaments in 1997, and for all intents and purposes, the terms are interchangeable. See La. C.C. art. 1577 cmt. (a) ("This article reproduces the substance of R.S. 9:2442. It does not change the law.”). Despite the fact that notarial testaments were not recognized at the time the 1994 Document was created, this opinion refers to the testament form as notarial, considering there is no substantive difference between the two.

. La. C.C. art. 1541 cmt. (b) states: "Donations of both immovable and movable property must be made by notarial act unless a particular exception applies. There are numerous exceptions to this Article including Article 1543 (manual gift) and Article 1550 (stock certificates and negotiable instruments)."

. La. C.C. art. 1543 provides: "The donation inter vivos of a corporeal movable may also be made by delivery of the thing to the donee without any other formality.” (emphasis added).